FILED IN CLERK'S OFFICE

MAR 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Deputy Clerk

| | | |
|---|---|---|
| TRACEY L. TOMCZYK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:00-CV-3417-JOF |
| JOCKS & JILLS RESTAURANTS, | : | |
| LLC, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

This matter is before the court on Defendant Jocks & Jills' motion for summary

judgment [91-1]; Defendant Joseph Rollins' motion for summary judgment [92-1]; the

Report and Recommendation of Magistrate Judge E. Clayton Scofield III [132-1]; Plaintiff's

objections to the Report and Recommendation [135-1]; Defendants' objections to the Report

and Recommendation [136-1]; Defendant Jocks & Jills' motion to strike Plaintiff's affidavit

[140-1]; Plaintiff's motion for clarification [149-1]; and James Ferguson's motion to

withdraw as counsel [150-1].

## I.   Background

AO 72A

## A.    Procedural History

Plaintiff, Tracey Tomczyk, filed suit against Defendants, various corporate entities of Jocks & Jills Restaurants, Inc. ("J&J"), and Joseph Rollins, the Chairman of the Board of J&J, on December 22, 2000, alleging that Defendants discriminated against her on the basis of her sex, subjected her to a sexually hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e; discriminated against her on the basis of race and subjected her to a racially hostile work environment in violation of Title VII and 42 U.S.C. § 1981; violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206; and intentionally inflicted emotional distress. Plaintiff amended her complaint on February 8, 2002 to add state law of claims of assault and battery, negligent supervision, and invasion of privacy. The J&J Defendants and Defendant Rollins filed motions for summary judgment on January 27, 2003. While those summary judgment motions were pending, Plaintiff filed a motion to amend and a motion to file a supplemental complaint on May 29, 2003.

## B.    Proceedings Before the Magistrate Judge

On August 27, 2003, Magistrate Judge E. Clayton Scofield III issued a 103-page Report and Recommendation. The Magistrate Judge exhaustively reviewed the facts of the case, *see* Report and Recommendation, at 4-31, and no party has contended in objections that the Magistrate Judge found any facts in clear error. Accordingly, the court accepts the

AO 72A
Rev.8/82)

version of the facts of the Magistrate Judge.   In summary, the Magistrate Judge recommended granting Defendants' motions for summary judgment with respect to Plaintiff's claim of disparate treatment and race discrimination under Title VII and § 1981; granting Defendant Rollins' motion for summary judgment on Plaintiff's Title VII claims against Rollins individually; denying Defendants' motions for summary judgment on Plaintiff's claim for hostile environment racial harassment under Title VII and § 1981; Plaintiff's claim for hostile environment sexual harassment under Title VII; and Plaintiff's Title VII retaliation claim; granting Defendants' motion for summary judgment on Plaintiff's Equal Pay Act claim with respect to comparator Walajtys, but denying it with respect to comparator Small; denying Defendants' motion for summary judgment on Plaintiff's Title VII disparate wage claim; and denying summary judgment on Plaintiff's state law claims of assault and battery, intentional infliction of emotional distress; invasion of privacy; and negligent retention.  Both Plaintiff and Defendants filed objections to the Report and Recommendation of the Magistrate Judge.

## II.   Discussion

### A.   Preliminary Matters

#### 1.   Plaintiff's Post-Discovery Affidavits

Plaintiff filed this lawsuit on December 22, 2000.  Discovery closed on November 18, 2002.  Since the close of discovery, Plaintiff has made numerous attempts either to amend

her complaint or "supplement" her testimony through various affidavits. The court must address the propriety of this post-discovery evidence before proceeding to consider the merits of Plaintiff's claims.

In response to Defendants' motions for summary judgment, Plaintiff submitted an affidavit which contained significant new information. For example, for the first time, Plaintiff testified that Rollins touched her in an offensive manner in February 1999 during a company trip to Cancun, Mexico. This new information is significant because Defendants moved for summary judgment on Plaintiff's assault and battery, negligent retention, and invasion of privacy claims asserting that Plaintiff had made no claims within the applicable statute of limitations period. It was not until Plaintiff had already seen Defendants' motions for summary judgment that she provided the testimony that Rollins had touched her in February 1999, a date within the limitations period. Importantly, Plaintiff had failed to mention this allegation during her deposition covering 712 pages which itemized approximately 35 other instances of alleged sexual harassment.

Before the Magistrate Judge, Defendants moved to strike Plaintiff's affidavit as a sham affidavit citing *Van T. Junkins & Assocs., Inc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984). The Magistrate Judge concluded that the affidavit only asserted "additional" facts and had no direct inconsistency with Plaintiff's deposition testimony. Thus, although the Magistrate Judge determined that the affidavit might "diminish Plaintiff's credibility,"

4

it should not be treated as a sham and struck from the record. *See* Report and Recommendation, at 3.

In the Eleventh Circuit, "a party cannot give clear answers to unambiguous questions in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (citing *Van T. Junkins & Assocs. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). The court recognizes that it must be careful to distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex*, 805 F.2d 949, 953 (11th Cir. 1986). The court finds, however, that after an exhaustive deposition and two years of discovery, it is more than a mere credibility or weight of the evidence issue for Plaintiff – after Defendants moved for summary judgment on this very issue – to file an affidavit which recounts new information going directly to the statute of limitations issue. The fact that Plaintiff alleges Rollins slapped her buttocks in February 1999 is information that was wholly within the possession of Plaintiff. Plaintiff has given no reason to the court for why she was not able to discuss this issue in her deposition or why the information only came to light after Defendants filed their motions for summary judgment. Accordingly, the court finds this allegation is in direct contradiction with Plaintiff's deposition testimony and must be stricken. *See also Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2002) (court

should consider several factors in determining whether later affidavit is contradictory including: whether affiant was cross-examined during previous testimony, whether affiant had access to information at time of previous testimony or whether affidavit is based on newly discovered evidence, whether the earlier testimony reflects confusion which the affidavit attempts to explain); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997) ("a party may not create a material issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony"); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."); *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988) (while conflicts in evidence are normally for jury to sift through, summary judgment appropriate where party's sudden revision of testimony creates issue of fact; otherwise previous depositions could always be supplemented by new affidavits to avoid summary judgment); *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."); *Moss v. Advance Circuits, Inc.*, 981 F. Supp. 1239 (D. Minn. 1997) (court rejected plaintiff's affidavit filed

6

in response to defendant's motion for summary judgment where her previous deposition testimony cited to only six instances of sexual harassment whereas affidavit contended plaintiff continually was subject to hostile work environment for three consecutive years).[1]

### 2.    Motion to Amend Complaint and Motion for Clarification

Similarly, after Defendants filed their motion for summary judgment, Plaintiff filed a  motion to amend and a motion to file a supplemental complaint on May 29, 2003. Plaintiff sought to add a claim of retaliation because after she filed her lawsuit, Defendants refused to provide her with the severance package she desired.   In his Report and Recommendation, Magistrate Judge Scofield denied Plaintiff's supplement to add a claim of retaliation because she had unduly delayed in bringing the motion and had known the predicate facts of her new allegation prior to the close of discovery.  The Magistrate Judge, however, did allow Plaintiff to amend the factual assertions in her complaint finding that Defendants had not relied on the factual assertions when drafting their motions for summary judgment.

On October 22, 2003, however, Judge Thrash denied Plaintiff's motion for leave to file supplemental complaint [120-1] holding that the "court is not persuaded by the reasons

---

[1]For the same reasons as discussed above, the court will not consider the new factual allegations raised by Plaintiff in her objections to the Report and Recommendation of the Magistrate Judge.  Accordingly, the court GRANTS Defendants' motion to strike Plaintiff's affidavit [140-1].

given by the Plaintiff for the undue delay in seeking to include the new claim in this action."
*See* Order, at 1. Judge Thrash did not specifically mention Plaintiff's motion to add factual
assertions. Thus, on November 5, 2003, Plaintiff filed a motion to clarify the court's
October 22, 2003 order. In her motion for clarification, Plaintiff attaches her Second
Amended Complaint which she contends amends factual assertions only.

Plaintiff contends that she seeks only to amend her complaint to have it conform to
her sworn testimony. The court, however, does not find this an appropriate reason for an
amendment of a complaint. As Judge Thrash noted in his order of October 22, 2003, this
information was all within the possession of Plaintiff, particularly at the time Plaintiff
concluded her deposition on November 19, 2001, and she has given no reason why she did
not file a motion to amend her complaint earlier. Finally, as Defendants note, Plaintiff's
proposed second amended complaint is more than a simple factual clarification; rather, it
adds substantively to her complaint regarding her job duties and the manner in which she
contends she was paid less than male counterparts. For the foregoing reasons, the court
DENIES Plaintiff's motion for clarification [149-1].

## B.    Race Discrimination

Beginning in 1994 and continuing for the next six years, Greg Clarkson, an African-
American male disc jockey, began doing promotions for J&J at various Atlanta restaurants.
Plaintiff and Clarkson began dating in 1998. Plaintiff contends that beginning in 1997,

AO 72A
Rev 8/82)

Rollins stated that he did not want her doing business with the radio stations that employed Clarkson "as long as [Plaintiff] was fucking a black guy." Rollins also commented that "once [Plaintiff] went black, she'll never go back" and made similar comments to several J&J shareholders at an office Christmas party. In January 1999, Rollins asked Plaintiff "why don't you just admit that you are fucking [Clarkson]?" In February 1999, Rollins asked Plaintiff whether she was taking food to "her black boyfriend's house." Rollins then suggested to Plaintiff that she "just hop the fence and come suck his dick which could be better than the black dick [she] was currently sucking."

Beginning in January 1999, Rollins also informed Plaintiff that her relationship with Clarkson was a conflict of interest because she hired him to do promotions at J&J restaurants in violation of J&J's anti-fraternization policy. He sent Plaintiff a memo informing her that she could not book promotions with the radio stations for whom Clarkson worked without his approval. Steve Todd, a J&J employee, testified that when a manager and a bartender at the Galleria location began dating, Rollins required one of the individuals to transfer to a different store.

In his Report and Recommendation, Magistrate Judge Scofield noted that in support of her claim of race discrimination, Plaintiff asserted she was terminated because she was involved in an interracial relationship with Clarkson. The Magistrate Judge found that Plaintiff could satisfy the first two prongs of the prima facie case because participation in

9

an interracial relationship is protected by Title VII and § 1981, and Plaintiff was terminated from her job. The Magistrate Judge further rejected Defendants' argument that Plaintiff was not qualified for her position at the time of termination.

The gravamen of the Magistrate Judge's analysis, however, turned on whether Plaintiff could demonstrate that similarly situated employees outside of her protected class received more favorable treatment. In this case, Plaintiff would have to show a J&J employee involved in a same race romantic relationship who was not terminated. The Magistrate Judge found that the record evidence did not support Plaintiff's contention that Rollins tolerated same-race relationships amongst J&J employees. Specifically, the Magistrate Judge noted that although various witnesses had testified about same-race relationships among J&J employees that took place without employment consequences, no witness could testify that Rollins was *aware* of those relationships. Further, Defendants did proffer evidence to show that Rollins had enforced both the anti-fraternization and in-store dating policies against numerous employees. The Magistrate Judge rejected Plaintiff's argument that Rollins had not fired her then-husband, Mark Tomczyk, when he was hired by J&J as a short term employee to help prior to the 1996 Olympics. Plaintiff did not testify as to whether she and Mr. Tomczyk were married at the time he worked for J&J, whether the two worked at the same restaurant during his employment, or whether Plaintiff was responsible for authorizing Mr. Tomczyk's pay during his employment. Moreover, Plaintiff

AO 72A
(Rev.8/82)

did not proffer any evidence to show that J&J's anti-fraternization policy (which prohibited employees whose duties including handling company finances from dating anyone who they are responsible for paying on behalf of J&J) was unevenly applied. In sum, the Magistrate Judge determined that Plaintiff could not set forth a prima facie case of race discrimination.

Plaintiff objects that the Magistrate Judge improperly required her to set forth a prima facie case of race discrimination under *McDonnell Douglas*. Plaintiff contends that whether a court requires a plaintiff to set forth a prime facie case under *McDonnell Douglas* is a flexible consideration depending on the factual circumstances of each particular case. *See* Objections, at 17-18 (citing *Wright v. Southland Corp.*, 187 F.3d 1287, 1292-93 (11th Cir. 1999), for the proposition that an employment discrimination plaintiff need not meet the elements of a prima facie case if she produces other evidence showing employment discrimination). *Wright* does illustrate that a plaintiff may make out a prima facie case of employment discrimination and force the employer to articulate a legitimate non-discriminatory reason for the employment action. In the alternative, under *Wright* an employee may show that the employment action "was more likely than not" caused by illegal discrimination. The court finds that under either standard, the Magistrate Judge correctly determined that Plaintiff had not met her burden. Although Plaintiff contends that Rollins holds "prejudicial views" of African-Americans and interracial relationships in general, Plaintiff has not proffered any evidence from which a trier of fact could reasonably conclude

11

that those views caused him to fire Plaintiff. This is particularly true where Defendants have proffered evidence to show that when Rollins was aware of same-race relationships that violated J&J's fraternization policy, he required that one of the parties be transferred.

The "flexibility" of the prima face case discussed in *Wright* does not authorize a reduced standard of proof when a plaintiff has not adduced any evidence from which a trier of fact could conclude that improper motives tainted an employment decision; rather, as Judge Tjoflat noted in *Wright*, flexibility is required to addressed unique factual circumstances. For example, if an African-American employee was fired by a white manager and the white manager was terminated shortly thereafter and replaced by a new manager, the fact that the new manager hired an African-American to replace the plaintiff does not preclude the plaintiff's suit for the mere fact that he could not show he was replaced by someone outside his protected class. *See Wright*, 187 F.3d at 1292. As such, the court does not find this a circumstance where Plaintiff can show that the employment action "was more likely than not" caused by illegal discrimination outside of the context of a prima facie case.

Plaintiff, next, essentially contends that the Magistrate Judge was incorrect in inferring from the facts presented that Rollins was unaware of several same-race relationships. Plaintiff supports this assertion with another post-discovery affidavit attached to her objections to the Report and Recommendation. As discussed above, discovery closed

on November 18, 2002, and Plaintiff has not given any reason for her delay in coming forward with the information contained in her affidavit. Thus, the court does not consider this new information. Accordingly, the court GRANTS Defendants' motions for summary judgment with respect to Plaintiff's disparate treatment race discrimination claim.

### C.    Sexual and Racial Harassment Claims (Laches)

Defendants argue that the doctrine of laches should bar the court's consideration of Plaintiff's sexual and racial harassment claims because Plaintiff was not diligent in asserting her claim based on conduct dating back to 1991 despite the fact that she believed she had been harassed at the time the conduct occurred. Defendants contend they have been prejudiced by Plaintiff's delay in bringing her claims. In his Report and Recommendation, the Magistrate Judge determined that Plaintiff's claims were not time barred under the Supreme Court's recent ruling in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Plaintiff alleged that Rollins harassed her both sexually and racially as late as June 1999, within the 180-day window before she filed her charge of discrimination with the EEOC. *See* Report and Recommendation, at 48-49, 51.

The Magistrate Judge recognized that *Morgan* sanctions the application of a laches defense in harassment cases, but found that Defendants had not set forth sufficient facts to establish such a defense. *See id.* at 42-44. The Magistrate Judge determined that Defendants' argument that Plaintiff was not diligent in bringing forward her claim was more

13

properly addressed to a *Faragher/Ellerth* defense. He further found that Defendants had identified only one witness who was not available to testify. Otherwise, Defendants' assertions of prejudice due to delay were merely conclusory. *Id.* Accordingly, the Magistrate Judge refused to bar Plaintiff's claims under the doctrine of laches.

Defendants object to this portion of the Report and Recommendation and contend that Plaintiff's undue delay is properly considered under laches. Defendants further contend that Plaintiff has alleged that Melanie Stafford, Stacey Smith, Peggy Dennison, and Roger Luces witnessed instances of harassment, but these individuals are no longer employed by Defendants. Further Randy Wittman, whom Plaintiff alleges has harassed her, is no longer in the jurisdiction. Thus, Defendants contend that Plaintiff's delay has prejudiced their defense.

The court agrees that the Supreme Court held in *Morgan* that an employer may raise a laches defense if it can show that the plaintiff (1) was not diligent in raising her claim and (2) the defendant is prejudiced by the plaintiff's lack of diligence. *See* 536 U.S. at 121-22. However, even if the court assumes that Plaintiff was not diligent in raising her claim, the court agrees with the Magistrate Judge that Defendants have not established prejudice as a result of the delay. The court finds the fact that certain of *Plaintiff's* witnesses are no longer employed by Defendants does not prejudice Defendants. Further, Defendants have not set forth for the court the prejudice they suffer due to the fact that Randy Wittman is not in the

14

jurisdiction. Accordingly, the court finds that Plaintiff's harassment claims are not barred by laches.

**D.**   *Faragher/Ellerth* **Affirmative Defense**

In *Faragher* and *Ellerth*, the Supreme Court established that employers can be vicariously liable for the actions of their supervisory personnel when the supervisor creates a hostile work environment. However, the Supreme Court also created an affirmative defense from vicarious liability where the plaintiff suffered no "tangible employment action" as a result of the sexual harassment. Conversely, if plaintiff suffers a "tangible employment action," no affirmative defense is available on the issue of vicariously liability. Defendants argue that they should be able to raise an affirmative defense under *Faragher/Ellerth* because Plaintiff did not suffer a "tangible employment action" as Plaintiff cannot show a causal link between her termination and any harassing behavior. Defendants contend instead that Rollins terminated Plaintiff because she granted unauthorized pay raises.

Around Memorial Day of 1999, Rollins announced that all employees would now be required to pay their own insurance premiums, payments that had previously been made by J&J. After several complaints, Plaintiff asserts that Rollins verbally instructed her to ensure that the salaries of three employees, including Plaintiff, were increased to offset the insurance payments. Plaintiff advised Trang Do, an employee in payroll, to take the necessary steps. On June 3, 1999, however, Rollins sent a memo to Plaintiff and Do stating

15

that salary changes could not be made without the express written permission of Rollins. Five days later, Plaintiff approved the raise for herself and two other J&J managers without the written approval of Rollins.  When Rollins discovered this on June 14, 1999, he terminated Plaintiff.

Plaintiff contends that the raises she instituted on June 8, 1999, were the ones that Rollins had given his verbal authorization for prior to his June 3 memo.  She further testified that numerous other memos directing that pay raises could only be instituted with prior written approval had been ignored without consequence.  Plaintiff also stated that when she complained to Rollins about harassment on occasions in 1995 and 1996, he told her "don't forget who you work for, I can fire you in a moment."  In 1997, after Rollins attempted to grab her buttocks on the dance floor at the Galleria location of J&J, Plaintiff told him she did not appreciate his actions. Rollins responded: "Fuck you, bitch. I'll do what I want. Don't forget I can fire you whenever I want." After a company trip to a football game in January 1999, Plaintiff complained to Rollins about some of his sexual comments to her and Rollins told her, "You don't like it?  Tough shit, leave." On the day she was terminated, Plaintiff complained to Rollins that another employee, Joe Atkinson, was sexually harassing her. *See* Pls.' Depo., at 249-50.

In his Report and Recommendation, the Magistrate Judge determined there was a dispute as to a material issue of fact with respect to the cause of Plaintiff's termination. This

dispute precluded granting summary judgment to Defendants on this affirmative defense. Specifically, the Magistrate Judge noted that Plaintiff testified Rollins would tell her, "don't forget who you work for, I can fire you in a moment," when Plaintiff would complain about harassment. *See* Report and Recommendation, at 59. The Magistrate Judge also found that Plaintiff had raised a material issue of disputed fact that her termination based on unauthorized pay increases was pretextual because she testified that Rollins had previously verbally authorized her to implement pay increases and she informed Rollins in June of 1999 that she was working on the increases and he verbally directed her to implement them. *See id.* at 60.

Defendants object that the Magistrate Judge relied on "inadmissible hearsay" testimony by Plaintiff concerning Rollins' verbal instruction to institute the pay increase. Further, Defendants contend that Plaintiff's testimony that Rollins verbally instructed the pay increase is "disingenuous" because Rollins had previously told her she needed written authorization. *See* Objections, at 23. As an initial matter, the court finds that Plaintiff's testimony regarding Rollins' instructions is not hearsay because Plaintiff is not proffering the statement for the truth of the matter but to show why she acted in the manner she did. Further, Defendants' argument concerning the sincerity of Plaintiff's testimony and the number of occasions on which she was reminded that written authorization was required go

17

directly to the weight of the evidence and may not be considered by the court on a motion for summary judgment.

The court notes that the Magistrate Judge also relied upon testimony made by Plaintiff for the first time in her affidavit in response to Defendants' motions for summary judgment. The court has already determined that Plaintiff's supplemental affidavit is untimely and does not consider that allegations raised for the first time in that affidavit. However, even discounting Plaintiff's most recent allegations, the court agrees with the Magistrate Judge that based on a totality of the evidence, there exists a material issue of fact with respect to whether Plaintiff's termination is causally linked to the harassing behavior.

In *Frederick v. Sprint/United Management Co.*, 246 F.3d 1305 (11th Cir. 2001), the court discussed "tangible employment action" in the context of the *Faragher/Ellerth* defense. The court found that "when a supervisor engages in harassment which results in an adverse 'tangible employment action' against the employee, the employer is automatically held vicariously liable for the harassment." *Id.* at 1311. The court further found that "a supervisor may simply intimate that a subordinate's career prospects will suffer if she does not submit to his advances." *Id.* at 1312. Thus, "a victim [of sexual harassment] need not provide evidence of a direct and express sexual demand to make a claim under the 'tangible employment action' analysis. *Id.* A plaintiff must, however, "present sufficient evidence to establish any causal link between the adverse 'tangible employment action' she suffered

18

and the alleged harassment." *Id.* In *Frederick*, the court found that the plaintiff had not presented sufficient evidence to show such a link because the employer had proffered unrebutted testimony that she did not receive a promotion due to attendance problems and a belief that the employee needed more development before being promoted. *Id.*

Here, no party disputes that Plaintiff was terminated, which is a tangible employment action. Rollins, one of Plaintiff's alleged harassers, terminated Plaintiff. To establish a causal link between the alleged harassment and her termination, Plaintiff has proffered evidence that she complained about harassment on numerous occasions, including the date she was terminated. In response to her complaints, Rollins would tell her not to forget who she worked for and that he could fire her at any time. Defendants contend that Plaintiff was fired because she improperly authorized pay increases. Unlike *Frederick*, however, Plaintiff here has proffered evidence to rebut Defendants' reason for her termination. Plaintiff testified that she had previously ignored Rollins' instructions only to increase pay with written authorization with no adverse consequence. Plaintiff also testified that she had informed Rollins that she was implementing the pay increases in question and Rollins told her that she could do so. As such, the court finds that there is a dispute of fact as to whether Plaintiff's termination was the result of her refusal to submit to an allegedly sexually harassing conduct or because of her violation of the policy concerning pay raises and Defendants cannot avail themselves of the *Faragher/Ellerth* affirmative defense at this time.

19

As the Magistrate Judge noted, however, this finding does not preclude Defendants from raising this defense before the jury.

### E.      Racial Harassment (Merits)

In his Report and Recommendation, the Magistrate Judge noted that Plaintiff's racial harassment claim was premised on comments Rollins made with respect to Plaintiff's relationship with Clarkson, an African-American male. The Magistrate Judge found that Plaintiff could not raise a racial harassment claim regarding Rollins' comments that she had a "nigger ass" or a "nigger butt" because Plaintiff is white and cannot establish a prima facie case of racial harassment based on racial slurs directed to African-Americans. *See* Report and Recommendation, at 47 & n.14. The Magistrate Judge found, however, that (1) on a continuing daily or weekly basis from November 1997, Rollins commented to Plaintiff that "once [she] goes black, she'll never go back; (2) in December 1998, Rollins commented that Plaintiff "is dating that black guy, she's probably sucking his dick"; (3) in 1999 on a bus trip to a sporting event, Rollins made these same types of comments; and (4) in June 1999, Rollins told Plaintiff she should perform oral sex on a white board member because "it must be better than that black dick you're currently sucking." The Magistrate Judge found these comments pervasive because some occurred on a daily or weekly basis. Further, the Magistrate Judge determined these comments were severe because they were purposefully directed at Plaintiff as a commentary on her sexual practices and not general banter. *Id.* at

O 72A
Rev.8/82)

49-51. As such, the Magistrate Judge recommended denying Defendants' motions for summary judgment with respect to Plaintiff's racial harassment claim.

The court has carefully considered whether these particular allegations sound in racial – or sexual – harassment. If Rollins' comments were critical of Plaintiff for violating some taboo prohibiting white women from having a sexual relationship with an African-American male, the court might find that Rollins' comments were based on Plaintiff's race. However, Rollins' comments are not of that character. Rather, Rollins conveyed his opinions about the relative quality of Plaintiff's experiences. The court determines that no reasonable juror following the law could conclude that Rollins' comments are because of *Plaintiff's* race, and thus, Plaintiff has not stated a claim for racial harassment. The court notes the same evidence is available to Plaintiff on her sexual harassment claim which survives Defendant's motion for summary judgment. Accordingly, the court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's racial harassment claim. Because the court determines as a matter of law that Plaintiff's racial harassment claim cannot go forward, the court need not address Defendants' objections concerning the weight and quality of the evidence presented.

## F.    Sexual Harassment (Merits)

Plaintiff contends that Rollins first began to sexually harass her on July 4, 1991, by hugging her, sticking his tongue in her ear, and grabbing her breast. In 1992 and 1993,

21

during Plaintiff's pregnancy and thereafter, Rollins commented on the size of her breasts.

In 1994, at a company trip to Cancun, Rollins said that Plaintiff had a "nigger butt," took an

underwater picture of Plaintiff in a bathing suit and then passed it around at the office in

Atlanta. In 1995, Rollins commented on Plaintiff's breasts, buttocks, and weight. He also

attempted to reach up the back of her dress to grab her buttocks and reach down the front

of her dress to grab her breasts at an office party. In April 1996, Rollins tried to grab

Plaintiff's breast on a bus trip home from a baseball game. In May 1996, Rollins pinched

the back of Plaintiff's arm and buttocks and pulled her onto his lap, joking about how fat she

was and how she had "no tits and a nigger butt." In July 1996, Rollins made comments

about Plaintiff's "big nigger ass" in front of other people during the Summer Olympics.

In late 1996 or early 1997, Rollins asked Plaintiff "why didn't [she] just take him

back to [her] office and fuck him on [her] desk." During 1997, Rollins told Plaintiff he

would like for her and two other female employees to come to his hotel room and "suck his

dick." Rollins gave Plaintiff his hotel room number, grabbed her, and stuck his tongue in

her ear. In October 1997, Rollins pulled Plaintiff out to the dance floor at the opening of a

J&J location at the Galleria and tried to grab her buttocks. Through 1997, Rollins' sexual

comments and behavior increased to the extent that it was so frequent that Plaintiff could

not describe every occurrence. Several times a week, Rollins commented on the size of

Plaintiff's buttocks and asked her to have sex with him. Plaintiff also asserts that other male

22

board members and shareholders of J&J, Joe Atkinson, Craig Sager, Randy Whitman, and Terry Deardon, also sexually harassed her.

Defendants argue that Plaintiff engaged in profane and sexually charged language and overt sexual conduct during her employment at J&J, and thus, any sexual conduct directed to her by Rollins and others was not unwelcome. In his Report and Recommendation, the Magistrate Judge determined that there was a disputed issue of material fact on the welcomeness of the conduct because although Defendants presented witnesses who testified as to the sexual banter engaged in by Plaintiff, Plaintiff testified that she did not engage in such conduct. Specifically, Plaintiff denies that she called a J&J shareholder a "pussy"; grabbed the genitals of a radio disc jockey during a photo shoot; engaged in public sexual activity while on a company trip to Cancun; and grabbed the buttocks of male bartenders. Plaintiff does admit that on one occasion, she did say that "she wouldn't suck [Rollins'] dick if it was the last dick left on Gilligan's Island." Defendants' objections reiterating the testimony regarding Plaintiff's conduct do not alter the fact that this testimony is disputed. Accordingly, the court finds that the Magistrate Judge appropriately determined that Defendants' motions for summary judgment could not be granted on welcomeness of Defendants' conduct.

The Magistrate Judge also determined that the conduct alleged was severe and pervasive. The Magistrate Judge first rejected Defendants' argument that the conduct was

23

not severe because Plaintiff also engaged in sexual banter and conduct, finding that this argument was a "rehash" of Defendants' "welcomeness" argument. *See* Report and Recommendation, at 55. The court agrees. As such, Defendants' objections raising the welcomeness argument are without merit at this stage for the same reasons as discussed above. Next, the Magistrate Judge rejected Defendants' argument that Rollins and Plaintiff did not spend much time together and therefore any alleged conduct could not be sufficiently frequent. The Magistrate Judge determined that Defendants improperly focused on Rollins' role in the accounting firm in which he testified that he did not see Plaintiff. Plaintiff, however, testified that she saw Rollins at least once or twice a week in the office and two to three times a week at various J&J restaurants. Additionally, Plaintiff testified that she saw Rollins weekly at corporate meetings. Based on this testimony, the Magistrate Judge concluded that there was at least a question of fact as to how frequently Rollins and Plaintiff were in contact. Again, the court agrees. Defendants' objections to this recommendation merely restate their arguments raised on the motions for summary judgment. For the same reasons as given in the Report and Recommendation, *see id.* at 55-56, the court rejects Defendants' objections and denies Defendants' motions for summary judgment on Plaintiff's claim of sexual harassment.[2]

---

[2]Defendants did not object to the Magistrate Judge's conclusion that the conduct of which Plaintiff complained was based on her sex. *See* Report and Recommendation, at 53-55.

AO 72A
Rev.8/82)

### G.  Retaliation

Plaintiff contends that she was terminated in retaliation for her complaints about racial and sexual harassment.   As the court noted above when discussing the *Faragher/Ellerth* affirmative defense, Plaintiff contends that she complained about sexual and racial harassment on numerous occasions, including the day of her termination.  Each time Plaintiff complained, Rollins would remind her that he was in charge and could fire her at any time.  Plaintiff also testified that on numerous occasions in the past, she had not followed Rollins' directive to get express written permission to institute pay raises, but had experienced no consequences.  She also testified that Rollins had given her permission to grant the raises in question.  Thus, Plaintiff contends that Rollins' proffered reason for her termination is pretextual.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that she (1) engaged in statutorily protected expression, (2) suffered an adverse employment action, and (3) the adverse employment action was causally linked to the protected expression.  Here, Defendants argue **only** that Plaintiff cannot show a causal connection between any protected activity and her termination.  The Magistrate Judge determined there was a material issue of disputed fact as to whether there was a causal link between Plaintiff's complaints of harassment and her termination.  *See* Report and Recommendation, at 63-65.  As such, the Magistrate Judge recommended denying Defendants' motion for

AO 72A
(Rev 8/82)

summary judgment with respect to Plaintiff's prima facie case of retaliation. The Magistrate Judge further found that Plaintiff has proffered sufficient disputed facts with respect to the pretextual nature of Defendants' explanation for her termination to allow her retaliation claim to go to the jury.

Defendants object and argue that Plaintiff cannot establish a prima facie case because she was terminated for violation of the company's pay raise policy.[3] Defendants further contend that Plaintiff has not shown their proffered legitimate non-discriminatory reason for termination is pretextual. As the court discussed above with respect to the *Faragher/Ellerth* affirmative defense, Plaintiff has proffered evidence to show that she complained to Rollins about harassment on numerous occasions, including the day that Rollins terminated her. In response to those complaints, Rollins would remind her "who she worked for" and that "he could fire her at any time." The court finds that this is sufficient evidence to establish a prima facie case of retaliation. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (to establish causal relationship, plaintiff must show the decision maker was aware of the protected expression and "the protected activity and the adverse action were not wholly unrelated").

---

[3]Defendants do not object to the Magistrate Judge's determination that Plaintiff need not actually have submitted a written complaint in order to have undertaken "protected activity" for the purposes of her retaliation claim.

Defendants proffer a legitimate, non-discriminatory reason for Plaintiff's termination – she violated the company policy that requires written authorization for pay raises. Plaintiff, however, rebutted Defendants' argument with evidence to show that the reason was pretextual. Plaintiff testified that she had previously implemented pay raises based on verbal authorization only and had suffered no employment consequences. Further, Plaintiff testified that Rollins had specifically authorized her to implement the pay raises that Defendants allege resulted in her termination. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (plaintiff can show pretext by demonstrating that employer's explanation is not credible). The court finds that the allegations raised by Plaintiff are sufficient to establish a material issue of disputed fact on whether Defendants retaliated against her by terminating her employment. Accordingly, the court DENIES Defendants' motions for summary judgment on Plaintiff's retaliation claim.

## H.    Equal Pay Act (Small)[4]

Plaintiff contends that from 1998 to the end of her employment, Mike Small received a larger base salary, car allowance, and bonus than Plaintiff and received a housing bonus that Plaintiff did not.

---

[4]Plaintiff did not object to the Magistrate Judge's finding that she could not establish an Equal Pay Act claim with respect to Gary Walajtys. The court does not consider any comments made by Plaintiff in response to Defendants' objections to the Report and Recommendation to be objections made by her.

AO 72A
(Rev.8/82)

To establish a prima facie case under the Equal Pay Act, a plaintiff must show that "an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998). Once the plaintiff establishes a prima facie case, an employer may escape liability by proving "by a preponderance of the evidence . . . that the differential is justified by one of four exceptions set forth in the EPA," including a differential based on any other factor other than sex. *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995). A plaintiff need not show discriminatory intent by the employer. *Mitchell v. Jefferson County Board of Education*, 936 F.2d 539, 547 (11th Cir. 1991).

The Magistrate Judge determined that in 1998, Mr. Small was paid $55,884.00 while Plaintiff was paid $54,570.36. As of March 22, 1999, Mr. Small was paid $65,000 per year, plus car allowance, rent, and bonus while Plaintiff received $60,000 per year, plus car bonus. He further found that Plaintiff had proffered sufficient evidence from which a jury could conclude that her job and Mr. Small's job required equal skill, effort, and responsibility, and were performed under similar working conditions. Thus, construing the facts in the light most favorable to Plaintiff, the Magistrate Judge determined that Plaintiff set forth a prima facie case under the EPA.

AO 72A
Rev 8/82)

Defendants contend that even if Plaintiff could establish a prima facie case, Plaintiff was paid at a different rate for reasons other than sex, including that Mr. Small received a higher pay increase in 1999 because he had relocated to Florida; Plaintiff received a smaller increase because of poor performance at the Galleria store; and Mr. Small's pay differential was based on his status as one of the company's founders and creator of the concept of J&J. Plaintiff contends that these reasons are pretextual because Rollins treated women in a derogatory manner. The Magistrate Judge stated:

> The Court acknowledges that Defendants have offered legitimate reasons for the pay differential between Small and Plaintiff. Despite the assertion of valid reasons for the disparity, in light of the evidence that Rollins frequently used derogatory and demeaning language toward Plaintiff personally and women in general, this Court concludes that a reasonable jury could find Defendants' explanation unworthy of credence.

Report and Recommendation, at 74-75.

The court disagrees with the Magistrate Judge's assessment that such general evidence of "derogatory and demeaning language" can rebut Defendants' legitimate non-discriminatory reasons for pay differential. In *Steger v. General Electric Co.*, 318 F.3d 1066 (11th Cir. 2003), with respect to the Equal Pay Act, the court held that "to rebut an employer's legitimate non-discriminatory reasons for its adverse action, an employee must produce evidence which *directly* establishes discrimination or which permits the jury to reasonably disbelieve the employer's proffered reason." *Id.* at 1079 (emphasis added). A decision maker's discriminatory comments, while not direct evidence, could provide

sufficient circumstantial evidence from which a jury could disbelieve the employer's proffered reason. *Id.* However, statements by decisionmakers "unrelated to the decisional process" do not satisfy the employee's burden. *Id.* Rollins' ex-wife's analysis of Rollins as having a "very schizophrenic vision of women . . . [as] either sluts or mothers," *see* Report and Recommendation, at 74, even combined with testimony from Plaintiff that Rollins referred to Plaintiff as a "fucking bitch" and a "cunt" is not affirmative evidence rebutting Defendants' proffered explanation because it does not directly establish discrimination or permit a jury to reasonably disbelieve the employer's proffered reason. Both comments are unrelated to the "decisional process."

Zachary Taylor, an employee, testified that on one occasion he remembered that Rollins stated to him that he would rather hire a man for a particular accounting position than a woman. Taylor Depo., at 118. Mr. Taylor, however, had no idea whether Rollins eventually offered that particular position to a man or a woman. *Id.* As such, at the summary judgment stage, the court cannot accord any weight to Mr. Taylor's testimony because no reasonable juror could rely on that statement to infer that Defendants paid Plaintiff less money because of her sex or that their explanation for a pay differential was pretextual. *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1325-28 (11th Cir. 1982) (holding that an inference is unreasonable if a jury must engage in speculation and conjecture to such a degree as to render its finding "a guess or mere possibility").

AO 72A
Rev 8/82)

Accordingly, the court GRANTS Defendants' motions for summary judgment on Plaintiff's claims under the EPA.

## I.     Title VII Disparate Pay Claim (Walajtys and Small)

The standard for demonstrating "similarity" is less stringent in Title VII cases than those brought under the EPA, but in Title VII cases, the plaintiff must also prove discriminatory intent.   The Magistrate Judge determined that Plaintiff had proffered sufficient evidence to show that her job was "similar" to both Messrs. Small's and Walajtys' jobs. The Magistrate Judge then rejected Defendants' proffered non-discriminatory reasons under the same analysis as conducted with respect to Plaintiff's EPA claims and concluded that "a reasonable jury could find, in light of testimony regarding Rollins' comments about Plaintiff and women in general that these reasons were not the real reasons for the disparity and that Plaintiff's sex was more likely the explanation for any differential in pay." *See* Report and Recommendation, at 77.

Defendants object and argue first that even under the more relaxed standards of Title VII, Mr. Small and Mr. Walajtys are not proper comparators.   Moreover, Defendants contend, Plaintiff has not adduced any evidence to show that Rollins intended to discriminate against her on the basis of her sex in setting her salary.

The court finds Defendants' objections have merit.  As the Magistrate Judge noted in his review of the evidence, Plaintiff's own testimony is replete with differences between

31

the job responsibilities that she had and those that Mr. Walajtys had.  For example, Plaintiff testified that she and Mr. Walajtys "split" the responsibilities of Director of Operations, with her running the "front end" of the restaurants while Mr. Walajtys running the "back end." Plaintiff, however, provided no testimony about the similarities in responsibilities between the "front end" and the "back end" that would require similar pay under the law.  Further, although Plaintiff testified that both she and Mr. Walajtys served as area and general managers overseeing various restaurants, she never provided any testimony to show that all area or general managers supervised the same number of restaurants in terms of either number or productivity.  Plaintiff's own testimony shows that she and Mr. Walajtys had various and different positions during the course of their employment with J&J.  In 1994, Plaintiff maintained the books for J&J and did controller duties, while Mr. Walajtys managed the restaurant's CNN location.  In 1996, Plaintiff worked with contractors on the 1996 Olympic promotions, while Mr. Walajtys acquired merchandise.  In 1997, Plaintiff "helped build out" the Galleria location, while Mr. Walajtys investigated franchise opportunities.  Although the court agrees that the standard for "similarity" law under Title VII is less stringent than that under the Equal Pay Act, the court finds that there is a paucity of evidence in the record to show that Plaintiff's position was in any meaningful way comparable to Mr. Walajtys'.

32

Even assuming that Mr. Walajtys and Mr. Small were proper comparators, the court finds that Plaintiff has failed to come forward with sufficient evidence of discriminatory intent. Here, Plaintiff offers three pieces of "evidence" to establish that Rollins acted with discriminatory intent: (1) the analysis of Rollins' ex-wife, (2) Rollins' "admission" that he would prefer a man for a particular position, and (3) Rollins' "admission" to his ex-wife that Plaintiff was his most trusted employee, he could not run the company without her, and she had more brains than all of his male managers. *See Plaintiff's Response*, at 44. As discussed above, however, for a jury to infer from this evidence that Rollins acted with discriminatory intent would require improper speculation and guess work. Accordingly, the court GRANTS Defendants' motions for summary judgment on Plaintiff's Title VII disparate pay claim with respect to both Small and Walajtys.

## J.    Assault and Battery & Invasion of Privacy

The Magistrate Judge concluded that Plaintiff's assault and battery claim was not time barred because she provided new testimony in response to Defendants' motions for summary judgment that Rollins touched her in February 1999 within the limitations period.

As the court described above, however, the court cannot consider Plaintiff's testimony of a February 1999 touching in Cancun, Mexico because it is in direct conflict with the extensive testimony given by Plaintiff during her deposition and prior to the close of discovery. Because Plaintiff alleged no acts of assault and battery that fall within the

AO 72A
Rev.8/82)

limitations period, the court GRANTS Defendants' motions for summary judgment with respect to Plaintiff's assault and battery claim. As the Magistrate Judge noted, an invasion of privacy claim does not exist in Georgia law for non-physical conduct. Because Plaintiff did not allege any physical conduct within the limitations period, the court also GRANTS Defendants' motions for summary judgment on Plaintiff's invasion of privacy claim.

### K.    Intentional Infliction of Emotional Distress

Defendants argue that Rollins' behavior does not rise to the level of outrageousness and egregiousness necessary to support a claim of intentional infliction of emotional distress. Defendants further contend that Plaintiff did not suffer any severe emotional distress as a result of Rollins' behavior. The Magistrate Judge determined that Plaintiff's allegations that Rollins actually touched her, as well as regularly subjecting her to sexual comments, propositions, commentary on her anatomy and public comments as to her sexual preferences and intimate relationships constituted outrageous behavior particularly in light of the employer-employee relationship. The Magistrate Judge recognized that the severity of the emotional distress allegedly produced by the defendant's conduct is a factor in an intentional infliction of emotional distress claim. However, the Magistrate Judge noted that Plaintiff testified that she took Prozac, suffered from "stomach problems," and "bouts of depression, anxiety, and insecurity." As such, the Magistrate Judge concluded that Plaintiff had created at least a material issue of disputed fact as to whether her emotional distress was work-

34

related or due to personal issues, such as her divorce proceedings. Further, because Rollins

can be considered the "alter ego" of the corporation, the Magistrate Judge determined that

the corporate defendants could be held liable for Rollins' acts.

Defendants' objections raise the same arguments made in their motions for summary

judgment. The court agrees with the determination of the Magistrate Judge that Plaintiff has

set forth facts from which a jury could conclude that she had been subject to intentional

infliction of emotional distress. As the Magistrate Judge noted, the particular circumstances

here of an employer-employee relationship and the sexual nature of Rollins' alleged conduct

contribute to its outrageousness nature. The court recognizes that Plaintiff testified she had

never been treated by a psychiatrist for emotional distress, but Georgia law does not require

such treatment. *Cf. Odem v. Pace Academy*, 235 Ga. App. 648, 656 (1998) (rejecting

plaintiff's intentional infliction of emotional distress claim where he testified in deposition

only that he suffered financial difficulties and that physician noted only marginal increase

in blood pressure when he went in for nasal congestion, and he sought no professional

advice from doctors or counselors). While the evidence is close, the court agrees with the

Magistrate Judge that Plaintiff has proffered sufficient facts from which a jury could

conclude that she suffered severe emotional distress. *See also Shepherd v. ISS International*

*Service System, Inc.*, 873 F. Supp. 1550, 158 (N.D. Ga. 1994) (Hull, J.) (denying summary

judgment on intentional infliction of emotional distress claim where pregnant plaintiff

35

alleged that defendant's actions resulted in emotional distress, the need for counseling, and caused her to take anti-depressant medication).

The court also agrees with the conclusion of the Magistrate Judge that although Plaintiff had not shown that the corporate defendants "ratified" Rollins' alleged conduct, the corporate defendants could be held liable because Rollins, as Secretary, Treasurer, Chairman of the Board, and controlling shareholder of J&J, is considered the alter ego of the corporate entities. Furthermore, if a corporation has knowledge of an employee's improper conduct, it may be liable for the conduct through a theory of ratification. *See Trimble v. Circuit City Stores, Inc.*, 220 Ga. App. 498, 501 (1996) (while employer generally not liable for intentional torts of employee, employer can be liable if it knew of the actions and ratified them through lack of response). Here, the corporation has constructive knowledge of Rollins' actions because of his position as Secretary, Treasurer, Chairman of the Board, and controlling shareholder of J&J. *See Pospicil v. The Buying Office, Inc.*, 71 F. Supp. 2d 1346, 1360-61 (N.D. Ga. 1999) (Forrester, J.) (allowing plaintiff's negligent retention claim to go forward where plaintiff claimed harasser was a member of company's management, because harasser, himself, should have known about his conduct and company had no formal grievance procedure). As such, the court DENIES Defendants' motions for summary judgment with respect to Plaintiff's intentional infliction of emotional distress claim.

AO 72A
Rev 8/82)

### L.    Negligent Retention

Because Plaintiff proffered evidence that Rollins' alleged sexual harassment occurred in front of other members of J&J's Board of Directors, the Magistrate Judge determined that Plaintiff had created an issue of fact as to whether the corporate defendants knew or should have known about Rollins' alleged propensity for engaging in sexual harassment. *See* Report and Recommendation, at 91-92. As such, the Magistrate Judge recommended allowing Plaintiff's negligent retention claim to go forward. Defendants object and contend that Plaintiff did not submit any written complaint of harassment to any J&J employee and no manager testified that Plaintiff had reported a complaint. Defendants also contend that other employees whom Plaintiff alleged were subject to harassment by Rollins have denied that they were harassed. The court finds these objections without merit because they fail to address the testimony cited by the Magistrate Judge that several members of J&J's Board of Directors actually witnessed Rollins' harassment of Plaintiff. Accordingly, the court DENIES Defendants' motions for summary judgment with respect to Plaintiff's negligent retention claim.

## III.    Conclusion

The court GRANTS IN PART AND DENIES IN PART Defendants Jocks & Jills' motion for summary judgment [91-1]; GRANTS IN PART AND DENIES IN PART Defendant Joseph Rollins' motion for summary judgment [92-1]; ADOPTS AS MODIFIED

AO 72A
(Rev.8/82)

the Report and Recommendation of Magistrate Judge E. Clayton Scofield III [132-1];

OVERRULES Plaintiff's objections to the Report and Recommendation [135-1];

OVERRULES IN PART Defendants' objections to the Report and Recommendation [136-1]; GRANTS Defendant Jocks & Jills' motion to strike Plaintiff's affidavit [140-1];

DENIES Plaintiff's motion for clarification [149-1]; and GRANTS James Ferguson's

motion to withdraw as counsel [150-1].

Specifically, the court GRANTS Defendants' motions for summary judgment on Plaintiff's claims as to:

- hostile environment racial harassment under Title VII and § 1981;

- disparate treatment race discrimination under Title VII and § 1981;

- Title VII against Rollins individually;

- disparate wages under the Equal Pay Act with respect to Walajtys;

- disparate wages under the Equal Pay Act with respect to Small;

- Title VII disparate wage claim with respect to Walajtys;

- Title VII disparate wage claim with respect to Small; and

- assault and battery and invasion of privacy.

AO 72A
(Rev 8/82)

The court DENIES Defendants' motions for summary judgment on Plaintiff's claim

for:

- hostile environment sexual harassment under Title VII;

- Title VII retaliation claim; and

- *intentional infliction of emotional distress and negligent retention.*

The parties are DIRECTED to submit a proposed consolidated pretrial order within

thirty (30) days.

**IT IS SO ORDERED** this _____ day of March 2004.

J. OWEN FORRESTER
UNITED STATES DISTRICT JUDGE

AO 72A
Rev.8/82)