IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRACEY L. TOMCZYK,         :
                                 :
           Plaintiff,      :
                                   :
           v.               :        CIVIL ACTION NO.
                                   :        1:00-CV-3417-JOF
JOCKS & JILLS RESTAURANTS,     :
LLC, et al.,                 :
                                   :
           Defendants.     :

## OPINION AND ORDER

This matter is before the court on Defendants' motion in limine on evidentiary issues [343-1]; Defendants' motion for judgment as a matter of law [366-1]; and Defendants' motion for a new trial [368-1].

**I.      Procedural History**

Plaintiff, Tracey Tomczyk, filed suit on December 20, 2000, against Defendants Joseph Rollins and Jocks & Jills, Inc., alleging various causes of action under Title VII of the Civil Rights Act of 1964 and the Equal Pay Act, as well as state law claims of intentional infliction of emotional distress and negligent retention. The court narrowed Plaintiff's claims on summary judgment, and the case proceeded to trial in July 2004 on the following causes of action: (1) Title VII retaliation, (2) Title VII sexual harassment, (3) intentional infliction

of emotional distress, and (4) negligent retention.   After Plaintiff's case in chief, the court granted Defendants' motion for judgment as a matter of law on Plaintiff's claims of retaliation and intentional infliction of emotional distress.   The jury then rendered a verdict in favor of Defendants on Plaintiff's sexual harassment and negligent retention claims.

Plaintiff appealed to the United States Court of Appeals for the Eleventh Circuit.   The Court of Appeals reversed and remanded the case to this court on Plaintiff's causes of action of retaliation and intentional infliction of emotional distress for conduct occurring after December 22, 1998, as well as negligent retention to the extent it involved those two claims.

The case was tried to a jury on Plaintiff's claims of retaliation, intentional infliction of emotional distress, and negligent retention on various days from November 13, 2006 to November 29, 2006.[1]   The court bifurcated the proceedings so that liability for intentional infliction of emotional distress and retaliation were tried to the jury in Phase One, while damages on those issues as well as liability for negligent retention were tried to the jury in Phase Two.

---

[1]During the course of pretrial proceedings and the trial, the parties filed numerous motions in limine with the court.   The court ruled on these motions during the pretrial conference and at various points during the trial.   On December 13, 2006 – several weeks after the jury reached its verdict – Defendants electronically filed a motion in limine on certain evidentiary issues at Docket Entry [343-1].   That document was signed on November 8, 2006, and the court notes that this motion is substantially similar to Defendants' motion in limine [292-1] filed on November 8, 2006 which the court GRANTED IN PART AND DENIED IN PART in a minute order entered on November 13, 2006.   To the extent that Docket Entry [343-1] differs in any respect from Docket Entry [292-1], the court GRANTS IN PART AND DENIES IN PART Defendants' motion in limine [343-1].

2

During Phase One, the jury returned a verdict on intentional infliction of emotional distress against Joseph Rollins that answered "yes" as to (1) that Joe Rollins engaged in intentional or reckless conduct, (2) that the conduct was extreme and outrageous, and (3) that the conduct caused emotional distress.   But the jury answered "no" to (4) that the emotional distress was severe.   With respect to Jocks & Jills, the jury answered "yes" on intentional infliction of emotional distress (1) that Jocks & Jills ratified the actions of Joe Rollins and is therefore also liable for intentional infliction of emotional harm.

The court recognized the problem with the verdict form as it stood because Jocks & Jills could not be liable to Plaintiff on intentional infliction if the jury had found that Joe Rollins was not liable.  The court stated:

> There is an irregularity on the verdict.  The verdict on Count 1 or Item One on the Jocks & Jills verdict is inconsistent with the verdict as to Mr. Rollins.  That's all I'm going to say, unless you send me a note and ask me a question.
> The first question that I'll ask for you to think about is whether you checked the marks and they are as intended.  If that is true, send me a note asking whatever it is you want to ask, and I'll try to answer that question.

*See* Trial Transcript, Vol. 8, at 2.

The jury then sent out an additional note that read "[c]an you explain more clearly where we went wrong?"  *See* Note from Jury, attached as Exh. D to Docket Entry [366-1] and Trial Transcript, Vol. 8, at 4.  The court brought the jury in and stated:

> Ladies and gentlemen, the effect of the verdict you handed me is this:  I'm just talking about intentional infliction of emotional harm, I'm not talking about retaliation.  If your verdict as to Mr. Rollins stands as you handed it up to me,

> Jocks & Jills cannot be liable.  The only way they would be liable is to find Mr.
> Rollins liable.  I can simply direct a verdict for the Defendants Jocks & Jills on
> that count, but before I do that I want you to understand that if you come back
> in a few minutes and tell me that you want to stand by your Rollins verdict, I
> will do that.   If you tell me you would like to deliberate further before you
> decide whether that's what you want to do, come back, nobody is going to be
> upset no matter how you answer the question, but I can't untie this knot.

Trial Transcript, Vol. 8, at 7.

At the bench while the jury was still in the courtroom, defense counsel noted that they could have objected to the court's instruction because "the way you instructed them they could go back and completely reverse their opinion." *Id.* at 8.  The court responded: "They can.  The reality is somebody on that jury thinks that they've given the plaintiff some money, and if they understand that they haven't done that, the reality is they may." *Id.*

The court then sent the jury for additional deliberations at which time Defendants moved for a directed verdict or a mistrial, both of which the court took under advisement. *Id.* at 10.  The court further stated: "Technically I probably [could] have gone on and taken the verdict and directed inconsistency, but I don't think that would be fair in that twelve jurors think they have given [Plaintiff] something . . . ." *Id.* at 11.

The jury then returned with a verdict which answered "yes" to all four elements of intentional infliction of emotional distress against Joe Rollins and retained the "yes" as to liability for Jocks & Jills on the intentional infliction claim.   Defendants again moved for a mistrial which the court indicated it was not inclined to accept. *Id.* at 13.  The jury rejected Plaintiff's retaliation claim finding that Plaintiff's opposition to prohibited practices was not

4

a substantial and determinative factor in her being discharged.  *See* Jury Verdict Form (Jocks & Jills), at 2.  The retaliation verdict is not at issue in any of these post-trial motions.

The court ordered the jury to return on November 27, 2006 for Phase Two of the trial.  Evidence was heard as to damages on the intentional infliction claim as well as liability and damages on negligent retention.  After deliberations, the jury reached a verdict on Phase Two.  Against Defendant Joseph Rollins, the jury awarded Plaintiff $250,000 in compensatory damages for emotional pain and mental anguish for intentional infliction of emotional distress and $750,000 in punitive damages for intentional infliction of emotional distress.  Against Defendant Jocks & Jills, Inc., the jury awarded Plaintiff $250,000 in compensatory damages for emotional pain and mental anguish for intentional infliction of emotional distress; $750,000 in punitive damages for intentional infliction of emotional distress; $50,000 in compensatory damages for emotional pain and mental anguish for negligent retention; and $200,000 in punitive damages for negligent retention.  In total, the jury awarded Plaintiff $2,250,000 in damages.

The Clerk of the Court entered judgment on the jury verdict on December 7, 2006.[2]

---

[2]Plaintiff filed a Bill of Costs with the Clerk of the Court on December 18, 2006.  The Clerk of the Court taxed costs in the amount of $22,129.48 on December 19, 2006.  On January 18, 2007, Defendants filed a brief in opposition to the Bill of Costs.  Under Federal Rule of Civil Procedure 54(d), the taxing of the Bill of Costs may be "reviewed by the court" on a motion "served within 5 days" after the taxing.  Here, Defendants did not file their opposition to the Bill of Costs within this time-frame and the court, therefore, will not consider Defendants' objections.

## II.      Discussion

Defendants raise several issues as to why the court should grant their motion for judgment as a matter of law or motion for a new trial, including: (1) the court's resubmission of the matter to the jury was procedurally improper, (2) Defendant Jocks & Jills cannot be liable to Plaintiff for Rollins' actions under a theory of ratification, (3) Plaintiff was improperly granted "double recovery" in the jury's punitive damages award; (4) because the jury found that Defendant Jocks & Jills did not act with specific intent to harm Plaintiff she is not entitled to compensatory damages for negligent retention; (5) Plaintiff did not proffer sufficient evidence from which a jury could conclude that she suffered emotional harm and was entitled compensatory damages; (6) Defendants were prejudiced by the court's evidentiary rulings; and (7) the damages awarded by the jury were excessive and should be reduced by the court.  The court addresses each in turn.

### A.      Resubmission of Intentional Infliction Claim

Defendants argue that the court improperly directed the jury to find against Joe Rollins on the intentional infliction claim when it resubmitted the matter to the jury.  Because the jury initially found there was no liability against Joe Rollins, Defendants aver, the court should have treated the jury's liability verdict against Jocks & Jills as mere "surplusage."  Defendants further assert that the court's resubmission of the matter violated their Seventh Amendment rights by implying to the jury that it should reverse its findings.  Finally, Defendants argue that under Federal Rule of Civil Procedure 49(a), the court may not resubmit a matter to the jury

when a special verdict form has been used.  Plaintiff responds that the verdict reached by the jury was inconsistent and the court properly returned the question to the jury under Federal Rule of Civil Procedure 49(a).

"A trial judge must make all reasonable efforts to reconcile an inconsistent jury verdict and 'if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly.'"  *See Burger King Corp. v. Mason*, 710 F.2d 1480 (11th Cir. 1983) (quoting *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973)).  "The test employed in determining whether a conflict in the verdict can be reconciled is 'whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted.'"  *Id.*  "However, if the jury's answers are so ambiguous or conflicting that they cannot be reconciled fairly, the trial court may not enter judgment thereon."  *Id.* "When an insurmountable inconsistency or ambiguity is perceived, the trial court may resubmit the issue to the jury before it is dismissed or order a new trial on some or all of the issues."  *Id.  See also Wilbur v. Correctional Services Corp.*, 393 F.3d 1192 (11th Cir. 2004) (in analyzing Rule 49(b), citing with approval to *Burger King* and noting that "preferred method" of resolving conflicts may be resubmitting it to the jury).  The protections of the Seventh Amendment require "a court to adopt a jury's verdict if the answers to the interrogatories in the verdict are consistent or if there is some view of the case which would make the jury's answers to the interrogatories consistent."  *See*, *e.g.*, *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1178 (5th Cir. 1987).  Furthermore, resubmission to the jury is not prohibited

7

under Rule 49(a) despite the fact that the Rule does not specifically authorize it. *Id.* (citing *Perricone v. Kansas City S. Ry. Co.*, 704 F.2d 1376, 1379 (5th Cir. 1983); *Guidry v. Kern Mfg. Co.*, 604 F.2d 320, 321 (5th Cir. 1979); and *Morrison v. Frito-Lay, Inc.*, 546 F.2d 154, 160 (5th Cir. 1977)).

Here, as the court's comments indicate, there was clearly an inconsistency in the jury's initial verdict form. As a matter of law, Jocks & Jills could not be held liable without a finding of liability against Joe Rollins. There was no way to reconcile the jury's findings as to Jock & Jills with those as to Joe Rollins. As the court noted in its comments to counsel, the court recognized it had the option to direct a verdict in favor of Defendants at that point, but the court determined that this would not be the appropriate course of action because at least some, and potentially all twelve jurors, believed that they had found some liability against Defendants and Plaintiff would be entitled to some damages. As the Eleventh Circuit intimated in *Wilbur*, the court found the proper action to be resubmission to the jury. The court made its decision considering the fact that the case had already been tried to a jury two times and the jury was still present to sort out the inconsistency.

Defendants are correct that the court in *McCollum v. Stahl*, 579 F.2d 869 (4th Cir. 1978), found that resubmission to the jury was improper, but the court finds that case distinguishable. There, in a section 1983 claim, the jury responded on the verdict form that the defendant sheriff had not wrongfully discharged an employee. Rather than stopping after answering "no" to that question, the jury went on to consider whether the sheriff's actions had

8

been malicious, wanton, or oppressive.  The jury answered "yes" to that question and awarded damages.  The court recognized that the verdict was inconsistent because if there was no wrongful discharge, there could be no liability against the sheriff.  Thus, the circuit court noted that at "the time of the recommitment there was before the court a decisive verdict, an unequivocal finding of no wrongful conduct" by the sheriff.  *Id.* at 871.  The inconsistency in *McCollum* was internal as to liability concerning the sheriff only.  Here, however, the inconsistency was not internal with specific elements of a charge, but rather that Rollins' "employer" could not be found liable without a finding of liability against Rollins.  The court's instruction pointed the jury to determining what they wanted to do with Rollins.  If they wanted him to remain not liable, they could do that.  The jury, however, upon resubmission determined that they wanted the liability to remain.

The court finds that in its resubmission to the jury, the court made it clear to the jury that it had the option of returning a "no" verdict against both Joe Rollins and Jocks & Jills. Thus, the court did not "direct" the jury to make any particular finding.  The court does not diminish the risks of resubmission even in light of neutral instructions, however, the court finds that under the circumstances, the best manner to resolve the inconsistency in the jury's verdict was to resubmit.

The court further notes that as a practical matter, Defendants' coercion argument might have greater force were it not for the significant damages awarded by the jury.  One might presume that if there were any doubt in the jury's mind as to whether Joe Rollins or Jocks &

9

Jills should have been liable, the jury would not have awarded such significant damages against both Defendants.   Rather, it appears that the court's concern – that the jury believed in their initial verdict that they would be awarding damages to Plaintiff – was correct.   For the foregoing reasons, the court denies Defendants' motion for a new trial and motion for judgment as a matter of law on the issue of resubmission to the jury.

**B.     Ratification**

Defendants argue that there was no evidence presented at trial which could have led a reasonable jury to conclude that Defendant Rollins was acting in the course and scope of Jocks & Jills' business or in furtherance of Jocks & Jills' business when he undertook the acts of intentional infliction of emotional distress against Plaintiff.   Defendants further argue that Plaintiff's ratification theory is precluded because there is no evidence to show that Jocks & Jills benefitted from Defendant Rollins' actions.   Plaintiff responds that Jocks & Jills ratified Rollins' conduct when it knew about the conduct and took no steps to correct it.

The most recent case to discuss the issue of ratification under Georgia law is *Travis Pruitt Associates, P.C. v. Hooper*, 277 Ga. App. 1 (2005).   This case was heard en banc by the Georgia Court of Appeals, however, the court split on the matter of greatest relevance to Plaintiff's claims here.   In *Travis Pruitt*, the plaintiff alleged that she was subject to sexual harassment by a co-worker and fellow employee of the Travis Pruitt firm.   The court determined that the sexual harassment did not arise out of the employment relationship because the actions were directed at plaintiff for purely personal reasons and did not result

10

in the furtherance of the company's business and "were not causally connected to a particular condition of the business." *Id.* at 2-3. "Under the principle of respondeat superior, an employer is liable for negligent or intentional torts committed by an employee in furtherance of and within the scope of the employer's business." *Id.* (citing *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 613 (2003)). The employer cannot be held liable on the basis of respondeat superior for an employee's tort committed "not in furtherance of the employer's business, but rather for purely personal reasons disconnected from the [employer's] authorized business." *Id.* at 3.

The plaintiff in *Travis Pruitt*, however, also asserted that her employer could be held liable under a theory of ratification because the company knew of the co-worker's harassment and did nothing to stop it. The plaintiff cited to four sexual harassment cases where one employee sexually harassed another employee for purely personal reasons disconnected from the employer's business. *See Wiley v. Georgia Power Co.*, 134 Ga. App. 187, 192-93 (1987); *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670 (1986); *Trimble v. Circuit City Stores, Inc.*, 220 Ga. App. 498 (1996); and *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636, 641 (1997). The majority wrote that in "all four cases we held that the employer could be held liable for an employee's intentional sexual harassment of a co-employee if there was evidence that the employer ratified the harassment after becoming aware of it." *Id.* at 3. The majority opinion suggested that these cases should be overruled because an "employer may ratify tortious conduct by an employee, and thereby assume liability for

11

unauthorized conduct, but for liability to be imposed on the employer by ratification, there must be evidence that the employee's conduct was done in furtherance of an employer's business and within the scope of employment." *Id.* at 3-4. However, there were not sufficient votes to overturn these cases, as thoroughly discussed in Judge Phipp's special concurrence.

Judge Phipps, writing for himself, as well as Judges Smith, Barnes, Miller, and Adams, first noted that the four cases cited by the majority were distinguishable from the plaintiff's claims in *Travis Pruitt*, and therefore, it was not necessary to overrule those cases to rule on the plaintiff's claims. Judge Phipps noted that in *Palladino*, the Supreme Court of Georgia held that no employer could be held liable for an employee's sexual misconduct, no matter how closely that conduct was associated with the employee's duties. *Id.* at 10. *See also Doe v. Fulton-DeKalb Hospital Authority*, 2006 WL 1222289, at *6, Civil Action No. 05-CV-2277 (N.D. Ga. May 4, 2006) (Thrash, J.) (rejecting plaintiffs' theory of ratification against hospital where the alleged substance abuse counselor employed by hospital sexually harassed them during counseling sessions). "The majority seeks to take that ruling one step further by effectively precluding an employer from ever being held liable for ratifying an employee's acts of sexual misconduct against another employee, no matter how inappropriately the employer responds to the victim's accusations of misconduct." *Id.* Judge Phipps concluded that whether "an act was committed within the scope of employment should be a separate, albeit related, inquiry from whether an employee ratified an act after its commission." *Id.*

12

"An employer's ongoing tolerance of tortious conduct, such as sexual harassment, logically amounts to ratification of that conduct." *Id.*

Defendants also point to *American Multi-Cinema, Inc. v. Walker*, 270 Ga. App. 314 (2004). There, the family of a patron sued a cinema complex and an off-duty police officer acting as a security guard for various causes of action related to assault and battery and intentional infliction of emotional distress when the officer arrested the patron for loitering after a movie. The jury returned a verdict of $3,000,000 against the cinema complex and $2,633 against the police officer. The cinema complex filed an appeal on numerous issues including challenging the instruction on "ratification" given by the trial court. The trial court instructed the jury that

> [w]here the employer ratifies the tort of the employee after its commission, it is the same as if the employer had commanded it, provided the employer had full knowledge of its employee's wrongdoing or an opportunity to know, yet deliberately failed to investigate. Ratification may be found where it is shown that the employee committed a willful injury and the employer continued thereafter to retain the employee.

*Id.* at 316-17. The Court of Appeals agreed that this instruction was erroneous. Rather, the court noted that under Georgia law, "[w]here the employee was acting exclusively for himself and was not acting at all for the master, and did not profess to be acting for the employer, the mere retaining of the servant after knowledge of his tort would not constitute ratification binding on the master." *Id.* at 317 (quotation and citation omitted).

13

The court finds the circumstances here distinguishable from each of these cases.  Here, the court finds significant that Plaintiff testified that Rollins would encourage her to undertake sexual activity with co-workers and subordinates in order to smooth difficulties in their working relationships.  This testimony indicates that Rollins' actions were related to the furtherance of Jocks & Jills' business.  Furthermore, the cases cited in *Travis Pruitt* all involved co-worker to co-worker sexual harassment and not harassment by an officer of the corporation who in effect controls the corporation.  Finally, the court finds persuasive the special concurrence on behalf of five of the judges of the Georgia Court of Appeals that an employer's ongoing acceptance of tortious conduct can amount to ratification of that conduct. For the foregoing reasons, the court denies Defendants' motion for a new trial and for judgment as a matter of law on the issue of ratification.

### C.    Double Recovery of Punitive Damages

During Phase Two of the trial, Defendants raised the question of whether Plaintiff's theory of punitive damages proceeded under O.C.G.A. § 51-12-5.1 or O.C.G.A. § 51-12-6. Section 51-12-5 was amended effective July 1, 1987 and a new section 51-12-5.1 was enacted in an effort to clarify Georgia's punitive damages provisions.  As a result of this amendment, Georgia courts have held that where there is no evidence of a physical impact from a defendant's actions, a plaintiff claims injury to her "peace, happiness, or feelings" pursuant to O.C.G.A. § 51-12-6.  Section 51-12-6 specifies that when a plaintiff brings her claims pursuant to this section, punitive damages under O.C.G.A. § 51-12-5.1 are not

available.   Damages under § 51-12-6 are not divided into punitive and compensatory, rather a jury awards one figure as a measure of damages.

Prior to the start of Phase Two of the proceedings, Plaintiff asserted that she believed she had introduced sufficient evidence of a physical impact and sought punitive damages pursuant to O.C.G.A. § 51-12-5.1.  When the jury rendered its verdict in Phase Two, under the negligent retention section, however, the jury specifically found that Plaintiff had not suffered a physical injury.  *See* Verdict Form (Nov. 29, 2006), at 3, attached as Exh. E to Docket Entry [333].

Because the jury determined that Plaintiff had not suffered a physical injury, Defendants argue that her only avenue of damages is pursuant to O.C.G.A. § 51-12-6, and the jury's award of punitive damages under § 51-12-5.1 is impermissible "double recovery." Defendants ask the court to vacate the punitive damages award against Defendants or order a new trial as to the entire issue of damages.   Plaintiff essentially does not respond to this argument.   Although Plaintiff repeats the standard for awarding punitive damages pursuant to O.C.G.A. § 51-12-5.1 and whether the cap under subsection (g) applies – issues not disputed by the parties – she does not address the conflict that arises when the jury determines that there was no physical damage to Plaintiff yet Plaintiff chose to pursue punitive damages under O.C.G.A. § 51-12-5.1 and not O.C.G.A. § 51-12-6.

O.C.G.A. § 51-12-6 traditionally has been referred to as the "vindictive damage" statute.   Because recovery for mental distress only is generally disfavored absent injury to the

AO 72A
(Rev.8/82)

person or the purse, this statute is a narrow exception to the "impact" rule.  *See Westview Cemetery v. Blanchard*, 234 Ga. 540 (1975).  The court in *Westview Cemetery* held that recovery under (now) § 51-12-6 precluded any recovery under § 51-12-5.  This holding was codified in the Tort Reform Act of 1987.  O.C.G.A. § 51-12-6 now specifically provides:

> In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors.  ***In such an action, punitive damages under Code Section 51-12-5 or Code Section 51-12-5.1 shall not be awarded.***

*Id.* (emphasis added).

Thus, the court finds that the plain meaning of the statute as interpreted through *Westview Cemetery* means that you cannot recover punitive damages under O.C.G.A. § 51-12-5.1 without a physical injury.  *See also Waldrip v. Voyles*, 201 Ga. App. 592, 595 (1991) (where plaintiff offered no evidence of physical injury or pecuniary loss, action fell within scope of O.C.G.A. § 51-12-6 and plaintiff could recover damages under that statute only, court wrote off $40,000 in punitive damages).  The court recognizes, however, that there are other cases which suggest the state of the law might be a bit more nuanced.  In *Alternative Health Care Systems, Inc. v. McCown*, 237 Ga. App. 355 (1999), a deceased's widow sued a hospice facility and two of its nurses for trespass, mutilation of body, intentional infliction of emotional distress, and related torts when the nurses wrongfully instructed the eye bank to remove the deceased's eye after the widow refused permission.  The jury awarded

16

compensatory damages against all defendants and punitive damages against the hospice facility. On appeal, the hospice facility asserted that the trial court erred in permitting a recovery of punitive damages because it allowed the plaintiff a "double recovery." *Id*. at 356. The court found, however, that the plaintiff had brought "a number of distinct tortious acts and causes of action were pled separately." *Id.* "While the jury's award theoretically *could* have been based entirely on a claim of injury to the peace and feelings of McCown, it is equally possible that the jury awarded compensatory damages and punitive damages on one of McCown's other claims or on combinations of claims, as recognized by *[Southern Gen. Ins. Co. v. Holt*, 200 Ga. App. 759, 768(5) (1991), *rev'd in part on other grounds*, 262 Ga. 267, 270(2) (1992)).]" *Id.* (emphasis in original). Thus, the court rejected the defendants' claim that McCown had received a double recovery.

Here, the jury was asked to make a finding as to physical injury only with respect to the negligent retention claim against Jocks & Jills. Therefore, there is a definitive answer to the question on that claim. The jury determined that Plaintiff did not suffer a physical injury, therefore, Plaintiff may not recover punitive damages on that claim. However, to go further and bar Plaintiff from recovering punitive damages on her intentional infliction of emotional distress claims against Jocks & Jills and Joe Rollins would require the court to speculate about the jury's findings in those claims. The jury was never specifically asked whether Plaintiff suffered a physical injury in its intentional infliction verdict. Therefore, as the court in *Holt* and *Alternative Health Care*, the court finds that the jury could have determined on

17

the intentional infliction claim that Plaintiff suffered physical injury when it awarded her compensatory damages.

For the foregoing reasons, the court grants in part Defendants' request to vacate the punitive damages awarded to Plaintiff pursuant to O.C.G.A. § 51-12-5.1.  The court vacates the $200,000 in punitive damages awarded by the jury to Plaintiff on her negligent retention claim.[3]

### D.      Punitive Damages on Negligent Retention Claim

Under punitive damages for negligent retention, Defendants argue that because the jury answered "no" to the inquiry of whether Defendant Jocks & Jills acted "with a specific intent to cause Ms. Tomczyk harm," Plaintiff is not entitled to any compensatory damages on the negligent retention claim which requires that willful or wanton conduct be directed toward Plaintiff.   Plaintiff responds that punitive damages are determined under a clear and convincing standard and thus cannot be compared to the preponderance of the evidence standard for liability claims.   Furthermore, Plaintiff contends, there is no inconsistency in the jury determining that willful or wanton conduct occurred but that there was no specific intent to harm Plaintiff.

---

[3]Although in the alternative, Defendants ask the court to order a new trial on damages, the court finds that Plaintiff made the choice to pursue her damages claims under § 51-12-5.1. The court specifically put the question to her counsel who were aware that a finding of physical damage would be necessary to support an award under O.C.G.A. § 51-12-5.1. Plaintiff chose that route and the court finds under these circumstances that it would be inappropriate to allow Plaintiff a second bite at the apple.

AO 72A
(Rev.8/82)

Defendants are correct that in order to bring a claim for negligent retention under Georgia law, a plaintiff must either demonstrate a physical impact/pecuniary loss or show that the defendant's conduct was "wilful or wanton and was directed to harm them." *See*, *e.g.*, *Evans v. Willis*, 212 Ga. App. 335, 337 (1994). In fact, on the liability portion of the jury verdict form for Plaintiff's negligent retention claim, the jury did reject the assertion that Plaintiff suffered any physical injury but specifically found that "Jocks and Jills' conduct directed toward Plaintiff was malicious, willful or wanton." *See* Jury Verdict Form (Nov. 29, 2006), at 3, attached as Exh. E to Docket Entry [333]. Thus, Plaintiff satisfied the elements of liability for a negligent retention claim.

Under Georgia law, punitive damages are available for a negligent retention claim. *See Rogers v. Carmike Cinemas, Inc.*, 211 Ga. App. 427, 431 (1993). The question of "specific intent to cause harm" arises out of the damages cap provided in O.C.G.A. § 51-12-5.1(g). The statute provides that in a non-product liability tort case, "if it is found that the defendant acted, or failed to act, with the specific intent to cause harm . . . there shall be no limitation regarding the amount which may be awarded as punitive damages." *See* O.C.G.A. § 51-12-5.1(f). However, the court finds there is no inconsistency between a jury finding of "willful or wanton" acts "directed" toward Plaintiff along with a finding that there was no "specific intent to cause harm." These two inquiries are separate and distinct. For example, a jury could believe that Defendant Jocks & Jills' actions were wanton because the company did not attempt to address Defendant Rollins' behavior, but that this failure to address his behavior

19

was not undertaken with the intent to cause Plaintiff harm.   Furthermore, a plaintiff must show entitlement to punitive damages by "clear and convincing evidence."   Therefore, the court rejects Defendants' assertion that a finding of "no specific intent to cause harm" under § 51-12-5.1(g) precludes a finding of liability under a non-physical injury negligent retention claim.

### E.       Remaining Claims

Defendants argue that Plaintiff did not proffer sufficient evidence from which the jury could conclude that she suffered emotional distress to support a compensatory damages claim.   The court finds this argument without merit.   Plaintiff proffered testimony that within the relevant time period, Defendant Rollins repeatedly used sexually vulgar language toward her and on at least one occasion attempted to touch her in a sexually suggestive manner. Plaintiff testified that due to the stress of the situation, she pulled bald patches in her hair and would vomit before going to work.   She further asserted that she was unable to sleep, was depressed, and took prescription medication.   There was surely evidence from which a jury could conclude that Plaintiff suffered sufficient emotional distress to support a finding of compensatory damages.   Plaintiff testified that she was experiencing other stressful situations in her life at that time – a divorce and the illness of her mother.   The jury was able to consider that evidence and still determined that Defendants' actions were the cause of Plaintiff's mental distress.   Nothing in Defendants' motion for a new trial convinces the court that this jury determination was improper or contrary to the evidence.

20

Defendants next contend that they were prejudiced by numerous of the court's evidentiary rulings.   The court recognizes the difficulty of trying this kind of case on damages only for actions after December 22, 1998.   However, Plaintiff was entitled to put her testimony in some kind of context.   With the numerous curative instructions given to the jury and numerous reminders that only action after December 22, 1998 could be considered for damages, the court finds that Defendants were not prejudiced by the introduction of pre-December 22, 1998 acts for the purposes of context.   Furthermore, the court's bifurcation of the trial into two phases was specifically designed to minimize the impact that such testimony would have on the case.

Finally, Defendants contend that the jury's award was excessive and should be reduced. The court finds that the damages awarded to Plaintiff, in a ratio of $550,000 in compensatory and $1,700,000 in punitive damages, though high, were not excessive under the circumstances of the testimony either under the due process standards articulated in *BMW v. Gore*, 517 U.S. 559 (1996), or the court's "general power to set aside a verdict" discussed in *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320 (11th Cir. 1999).

## III.   Conclusion

The court GRANTS IN PART AND DENIES IN PART Defendants' motion in limine on evidentiary issues [343-1]; DENIES Defendants' motion for judgment as a matter of law [366-1]; and GRANTS IN PART AND DENIES IN PART Defendants' motion for a new trial [368-1].

21

The court vacates $200,000 of punitive damages awarded to Plaintiff on her negligent retention claim.

Defendants are DIRECTED to pay Plaintiff $22,129.48 in costs.

**IT IS SO ORDERED** this 6th day of March 2007.

          s/ J. Owen Forrester
          J. OWEN FORRESTER
     SENIOR UNITED STATES DISTRICT JUDGE

22